UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Rhonda S. Abbott,
    Plaintiff

    v.                                           Civil No. 05-cv-127-SM
                                                  Opinion No. 2006 DNH 012
Town of Salem, New Hampshire;
Prints Plus, Inc.; Control
Security Services, Inc.; Simon
Property Group, Inc.; Louis Currier;
Jeffrey Ouellette; Kristin Fili;
Nicholas J. Tela; Greg Weeden; and
Denise L. Smith,
    Defendants


**O R D E R**


Rhonda Abbott asserts claims under the Americans With Disabilities Act ("ADA") and, apparently, New Hampshire common law, for damages arising from an incident in which private security guards allegedly forcibly removed her from the Prints Plus store at the Mall at Rockingham Park, and a Salem, New Hampshire, police officer arrested her.  Before the court are a motion dismiss Counts II and V filed by defendants Louis Currier,

Jeffrey Ouellette,[1] and Kristin Fili[2] and a motion to dismiss Count III filed by defendant Control Security Services, Inc. Plaintiff objects to both motions.  For the reasons given, both motions to dismiss are granted, with prejudice with respect to plaintiff's federal claims, and without prejudice to filing a properly drafted amended complaint asserting state law claims.

**The Legal Standard**

A motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true the factual allegations of the complaint and construe all reasonable inferences therefrom in favor of [plaintiff]." Perry v. N.E. Bus. Serv., Inc., 347 F.3d 343, 344 (1st Cir. 2003) (citing

---

[1] Currier and Ouellette are security guards employed by Control Security Services, Inc.

[2] Fili is a Salem, New Hampshire, police officer.

Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998)).  "A district court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if 'it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

**Factual Background**

The facts of this case, as alleged in Abbott's complaint and presented in the light most favorable to her, are as follows.

Abbott suffers from a hearing impairment.  On November 3, 2001, she went to the Prints Plus, Inc. store ("Prints Plus") in the Mall at Rockingham Park ("the mall") to pick up a painting she had left for framing.  The mall is managed by Simon Property Group ("Simon").  When Denise Smith, the clerk at Prints Plus, was unable to find Abbott's picture, Abbott asked Smith if she could look for it herself.  Abbott had difficulty hearing Smith's response, and asked for paper and a pen, so she could communicate

in writing.  In response, Smith ordered Abbott from the store.  Abbott again had difficulty hearing and understanding Smith, and did not leave the store.  Smith called for mall security, which is provided by Control Security Services, Inc. ("Control"), pursuant to a contract with Simon.

In response to Smith's call to security, Louis Currier went to the Prints Plus store, accompanied by Greg Weeden and Nicholas Tela.  Currier was an off-duty Salem police officer employed by Control.  Weeden was Control's Security Director, and Tela was Control's Security Supervisor.  When Currier, Weeden, and Tela arrived, Abbott tried to explain the situation to them, and asked them for a pen and paper.  They refused, and told Abbott to leave the store.  Then, at the direction of Weeden and Tela, Currier placed Abbott in handcuffs.  In doing so, Currier threw Abbott to the floor, causing her to strike her head on the wall.

After he placed Abbott in handcuffs, Currier called Jeffrey Ouellette for additional assistance.  Like Currier, Ouellette was an off-duty Salem police officer employed by Control.  When Ouellette arrived, Abbott asked him for a pen and paper, but he

refused to provide them.  Then Currier, Ouellette, Weeden, and Tela escorted Abbott through the Mall in handcuffs.  She was placed in a Salem police cruiser, driven by Officer Kristin Fili. Officer Fili, in turn, transported Abbott to the Salem police station.  En route, Officer Fili refused to communicate with Abbott, and at the police station, Fili and other officers taunted Abbott regarding her hearing impairment.

**Discussion**

A. Count II

In Count II, Abbott seeks damages from Currier and Ouellette for failing to provide her with a pen and paper, throwing her to the ground while handcuffing her, escorting her through the Mall in handcuffs, and placing her in Officer Fili's cruiser.  While the complaint is not clear on this point, Count II appears to assert both an ADA claim and common law claims.

Count II does not mention, by name, any common law cause of action, but in Count I, against Prints Plus and Smith, Abbott asserts that as a result of Smith's violation of her rights under the ADA, she was assaulted, unlawfully detained, and falsely

5

imprisoned by various other defendants, including Currier and Ouellette.  Moreover, in her objection to the motion to dismiss Count II, plaintiff states that "[t]he state law claims alleged against the Defendants, Currier, Ouellette and Fili are not addressed in this Memorandum as those claims are not a part of their Motion to Dismiss," (Pl.'s Obj. at 2), which suggests plaintiff's belief that she adequately asserted common law claims against Currier, Ouellette, and Fili.  She has not done so.  Currier and Ouellette had no reason to address any common law claims, because Count II includes no common law claims that have been pled by means of "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

The court construes Count II as an ADA claim.  If plaintiff intended to assert common law claims against Currier and Ouellette in Count II, she may, within thirty (30) days of the date on this order, file an amended complaint setting out separate causes of action in separate counts, plainly and concisely stating the nature of the claim and the legal theory upon which she seeks relief.

Regarding her ADA claim, it would appear that Abbott is alleging in Count II that Currier and Ouellette violated Title III of the ADA by failing to provide her with a pen and paper when she requested them. Currier and Ouellette move to dismiss Count II on grounds that Title III does not apply to individuals. Abbott counters that under the relevant statutory definitions and decisional law, Currier and Ouellette are subject to ADA liability. They are not.

Title III of the Americans With Disabilities Act provides, in part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Abbott argues that Currier and Ouellette "operated" security services at the Mall in a manner that makes them liable under the ADA.

Even assuming, for argument's sake, that "security at the mall" – rather than the mall itself – is a place of public

7

accommodation within the meaning of the ADA, Currier and Ouellette did not operate mall security.  In the primary case on which Abbott relies for the proposition that individual liability is possible under the ADA, <u>Gluckenberger v. Boston University</u>, 957 F. Supp. 306 (D. Mass. 1997), the district court denied a motion to dismiss filed by John Silber, president of Boston University at the time of the ADA violations alleged by the plaintiff, but granted a motion to dismiss filed by Craig Klafter, who was: (1) labeled in the complaint as the assistant to Boston University's current president; (2) identified as "responsible for insuring that students with disabilities in Boston University are treated in compliance with state and federal law"; and (3) alleged to have "knowingly 'participated in carrying out and continuing' the university's allegedly discriminatory accommodations policies".  The court noted:

> Klafter's alleged role as an "assistant" undermines the plaintiffs' argument that he exercises the authority, control, or discretion that is necessary for one to be deemed an "operator" of a place of public accommodation for the purpose of liability under Title III.  In the complaint, plaintiffs allege only that Klafter assists in the perpetration of BU's discriminatory policy, and, by making such a characterization, plaintiffs have failed to state facts sufficient to support the claim that Klafter is subject to individual liability under the ADA.

Id. at 323.  Currier and Ouellette, similarly, did not "operate" mall security and, as a consequence, are not liable to Abbott under the ADA.[3]

Abbott's ADA claim against Currier and Ouellette also fails for a more basic reason.  Count II seeks only money damages.  Money damages are not available under Title III of the ADA, see Dorsey v. City of Detroit, 157 F. Supp. 2d 729, 733 (E.D. Mich. 2001), and the complaint does not assert facts warranting injunctive relief.

Because Currier and Ouellette are not liable under the ADA, as a matter of law, and because Count II seeks a remedy unavailable under Title III, Currier and Ouellette are entitled to dismissal of Count II.

---

[3] That Currier and Ouellette were subordinates rather than decision-makers is demonstrated by plaintiff's own factual allegation that "plaintiff was placed in handcuffs at the direction of Tela and Weeden."  Compl. ¶ 34.

B. Count V

In Count V, Abbott seeks damages from the Town of Salem and Officer Fili for failing to fulfill the Town's duty, under the ADA, to provide proper assistance to handicapped persons in the mall and at the Salem police station.  Plaintiff has stipulated, in response to a request for a more definite statement, that the legal bases for Count V are Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Fili moves to dismiss Count V on grounds that individuals are not subject to liability under Title II of the ADA or Section 504 of the Rehabilitation Act.  Abbott counters that individual liability under those statutes is "almost a case of first impression" and that the blanket elimination of individual liability urged by Fili "would materially inhibit voluntary compliance with the laws promulgated to eliminate discrimination [against] those with disabilities."

1. Title II of the ADA

Title II of the Americans With Disabilities Act provides, in part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  The statute defines "public entity" as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority . . ." 42 U.S.C. § 12131(1).  Plaintiff's theory is that Officer Fili was an "other instrumentality" of the Town of Salem.

While the court of appeals for this circuit has yet to decide whether Title II of the ADA provides for individual liability, five other circuits have ruled that "§ 12132 does not provide for claims against individuals in their individual capacities."  Miller v. King, 384 F.3d 1248, 1277 (11th Cir. 2004) (citing Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir.

11

2002); Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir. 2001); Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000), abrogated on other grounds, as recognized in Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912-13 (7th Cir. 2003); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).

The instrumentalities listed in § 12131(1) are all collective units, making it readily apparent that Congress intended for the term "other instrumentalities" to include other collective units, but not individuals, within the definition of "public entity."  See United States v. McKelvey, 203 F.3d 66, 71 (1st Cir. 2000) ("where general words ('other matter' in this case) follow the enumeration of particular classes of things ("books, magazines, periodicals, films, video tapes"), the general words will be construed as applying only to things of the same general class as those enumerated").  Because Fili is not a "public entity" within the meaning of Title II of the ADA, the ADA claim against her in Count V is dismissed.

### 2. Section 504 of the Rehabilitation Act

"[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." Garcia, 280 F.3d at 107 (citing Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 557 (D.N.J. 2000); Montez v. Romer, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999)). Accordingly, the Rehabilitation Act claim against Fili in Count V is also dismissed.

### C. Count III

In Count III, Abbott seeks damages from Control, as an independent contractor, under contract to Simon, for failing to fulfill its duty under the ADA to provide her with assistance. Specifically, plaintiff appears to assert that Control violated the ADA by virtue of the failure of Currier and Ouellette to provide her with a pen and paper with which to communicate. Like Count II, Count III may or may not be asserting one or more common law claims against Control, and, in the interest of caution, Control has moved to dismiss claims for false arrest, false imprisonment, and assault and battery. But, like Count II, the court construes Count III as asserting an ADA claim only. If

plaintiff meant to assert common law claims as well, she may file an amended complaint, setting out those claims in a proper fashion (one cause of action per count), within thirty (30) days of the date of this order.

Control moves to dismiss Count III on grounds that it is not an entity that "owns, leases (or leases to), or operates a place of public accommodation." Abbott counters that Control qualifies as an operator of a place of public accommodation by virtue of its operation of security at the mall.

As noted above, liability under Title III is limited to persons who own, lease (or lease to) or operate places of public accommodation. Based upon plaintiff's factual allegations, Control does not operate a place of public accommodation. Control's position relative to the mall is analogous to the position of Ogden Aviation Services, International ("Ogden") in Adiutori v. Sky Harbor Int'l Airport, 880 F. Supp. 696 (D. Ariz. 1995). In Adiutori, the plaintiff asserted ADA claims against the City of Phoenix, owner and operator of Sky Harbor Airport,

14

and Ogden, which provided skycap services at the airport.[4]  In attempting to hold Ogden liable under Title III of the ADA, "[t]he plaintiff assert[ed], without any legal citation other than the statute [42 U.S.C. § 12181(7)(G)[5]], that Ogden 'is bound by this statute by the fact that it is a private entity providing a service in a "terminal, depot or other station used for specified public transportation."'" 880 F. Supp. at 704.  The district court rejected that argument:

> [Section] 12182 does not state that it applies to entities which merely provide a service in a place of public accommodation, e.g. a terminal, etc. – it only applies to entities which own, lease or operate a place of public accommodation and the plaintiff does not explain how Ogden fits into that definition.  The only evidence of record concerning Ogden's relationship to Phoenix is that Ogden possesses a permit from Phoenix, which is the owner and operator of Terminal Four, to conduct business therein.

Id.  Here, the facts alleged by plaintiff are that Control provides security services at the mall, under a contract with

---

[4] Specifically, the plaintiff asserted that he suffered a heart attack on a "flight from Phoenix to Pittsburgh, allegedly caused by the defendants' failure to provide him with proper handicap services while in transit between terminals at Sky Harbor International Airport."  880 F. Supp. at 699.

[5] Section 12182(7)(G) defines the term "public accommodation" to include "a terminal, depot, or other station used for specified public transportation."

Simon. Control operates a security service; it does not operate a place of public accommodation. Accordingly, Count III is dismissed.

## Conclusion

For the reasons given, Currier, Ouellette, and Fili's motion to dismiss (document no. 33) and Control's motion to dismiss (document no. 38) are both granted.[6] Accordingly, the ADA and Rehabilitation Act claims set out in Counts II, III, and V are dismissed with prejudice. However, if plaintiff chooses to pursue common law claims against any of the defendants in this case – not just those who moved to dismiss Counts II, III, and V – she may do so by filing an amended complaint, within thirty (30) days of the date of this order. In that complaint, each separate cause of action must be set out in a separate count, plainly describing the claim and the legal theory entitling her to relief.

---

[6] As the motion to dismiss granted herein (document no. 38) supersedes Control's previous motion to dismiss (document no. 10), that motion is, necessarily, moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 2, 2006

cc: William R. Sullivan, Jr., Esq.
    William R. Sullivan, Sr., Esq.
    Donald E. Gardner, Esq.
    Catherine M. Costanzo, Esq.
    John P. Coakley, Esq.
    Richard J. Riley, Esq.
    Vincent A. Wenners, Jr., Esq.
    Meredith M. Lasna, Esq.