UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Rhonda S. Abbott,
    Plaintiff

    v.                                          Civil No. 05-cv-127-SM
                                                Opinion No. 2007 DNH 030
Town of Salem, New Hampshire;
Prints Plus, Inc.; Control
Security Services, Inc.; Simon
Property Group, LP; Louis Currier;
Jeffrey Ouellette; Kristin Fili;
Nicholas J. Tela; Greg Weeden; and
Denise L. Smith,
    Defendants

**O R D E R**

Rhonda Abbott asserts claims under the Americans With Disabilities Act ("ADA") and New Hampshire common law, for damages arising from an incident occurring at the Prints Plus store at the Mall at Rockingham Park.  Plaintiff alleges she was forcibly removed from the store by private security guards, and arrested by Salem police officers.  Before the court is a motion to dismiss Counts VI, VI*[1], and VII filed by defendant Simon Property Group, LP.  Plaintiff objects.  For the reasons set forth below, defendant's motion is granted.

---

[1] Plaintiff's third amended complaint contains two counts labeled "Count VI."  For purposes of this motion, the court refers to the first (assault) as Count VI and the second (unlawful arrest and false imprisonment) as Count VI*.

**The Legal Standard**

A claim is subject to dismissal under FED. R. CIV. P. 12(b)(6) when the plaintiff "fail[s] to state a claim upon which relief can be granted." The inquiry under Rule 12(b)(6) is limited, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). All facts pled in the complaint are accepted as true and inferences are drawn in the light most favorable to the plaintiff. See, e.g., Citibank v. Grupo Cupey, Inc., 382 F.3d 29, 31 (1st Cir. 2004) (quoting TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)). But, claims consisting of "bald assertions" or "unsupportable conclusions" will be rejected. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004) (quoting Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002)). "A district court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if 'it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

**Factual Background**

The facts, as Abbott describes them in her third amended complaint, and construed in the light most favorable to her, are as follows.

Abbott suffers from a hearing impairment. On November 3, 2001, she went to the Prints Plus, Inc. store ("Prints Plus") in the Mall at Rockingham Park ("the mall") to pick up a painting she had framed. The mall in which Prints Plus is located is managed by Simon Property Group, LP ("Simon"). Denise Smith, a clerk at Prints Plus, was unable to find Abbott's painting. Abbott asked Smith if she could look for it herself. Abbott had difficulty hearing Smith's response, and asked for paper and a pen, so she could communicate in writing. Smith, however, ordered Abbott from the store. Abbott again had difficulty hearing and understanding Smith, and did not leave the store. Smith called for mall security, which is provided by Control Security Services, Inc. ("Control"), under a contract with Simon.

Responding to Smith's call, Louis Currier went to the Prints Plus store, accompanied by Greg Weeden and Nicholas Tela. Currier was an off-duty Salem police officer employed by Control. Weeden was Control's Security Director, and Tela was Control's Security Supervisor. When Currier, Weeden, and Tela arrived,

Abbott tried to explain the situation to them, and asked them for a pen and paper.  They also refused, and told Abbott to leave the store.  Then, at the direction of Weeden and Tela, Currier placed Abbott in handcuffs.  In doing so, Currier allegedly threw Abbott to the floor, causing her to strike her head on the wall.

After he placed Abbott in handcuffs, Currier called Jeffrey Ouellette for additional assistance.  Like Currier, Ouellette was an off-duty Salem police officer employed by Control.  When Ouellette arrived, Abbott also asked him for a pen and paper, but he refused as well.  Then Currier, Ouellette, Weeden, and Tela escorted Abbott through the Mall in handcuffs.  She was placed in a Salem police cruiser, driven by Officer Kristin Fili.  Officer Fili, in turn, transported Abbott to the Salem police station.  En route, Officer Fili refused to communicate with Abbott, and at the police station, Fili and other officers allegedly taunted Abbott regarding her hearing impairment, or so Abbott claims.

Abbott filed suit by way of complaint dated April 7, 2005 alleging violations of the ADA, assault, unlawful arrest, and false imprisonment against each of the defendants.  Of relevance here are Count VI, asserting that Simon violated Abbot's rights under the ADA, and Counts VI* and VII which allege that Simon,

4

through its security contractor, Control, unlawfully arrested and detained Abbott.

**Discussion**

Simon moves to dismiss all three counts against it, arguing that Abbot's claims do not involve Simon or its personnel. Abbott asserts that Simon is vicariously liable for Control's actions.

I.   ADA Violation (Count VI)

Title III of the Americans with Disabilities Act provides, in part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  Abbott argues that Simon is vicariously liable because its security contractor, Control, failed to provide her with the means for effective communication as required under the ADA.  See 42 U.S.C. § 12182(b)(2)(A)(iii) (requiring places of public accommodation to provide auxiliary aids and services to accommodate those with disabilities).  Simon

operates a place of public accommodation for purposes of the ADA. See 42 U.S.C. § 12181(7)(E).  The only contested issue is whether Simon can be held vicariously liable for ADA violations by an independent contractor.

The court need not reach the vicarious liability issue, however, because plaintiff's claim fails for a different reason. In Count VI of her third amended complaint, Abbott seeks "judgment against the defendant, Simon, for . . . damages under the ADA as set forth in 42 U.S.C. § 12188(a) . . . or otherwise, and costs of this action."  The ADA, however, does not provide for money damages. Goodwin v. C.N.J., Inc., 436 F.3d 44, 50 (1st Cir. 2006) ("[The] unbroken skein of cases makes manifest that money damages are not an option for private parties suing under Title III of the ADA").  Further, the Court of Appeals has held that "[a] litigant's interest in a possible award of attorneys' fees is not enough to create a justiciable case or controversy if none exists on the merits of the underlying claim. Id. (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990)).

Thus, because Title III of the ADA does not provide for monetary damages, and because Abbott's third amended complaint

6

does not assert facts warranting injunctive relief,[2] Simon is entitled to dismissal of Count VI.

II. Assault (Count VI*) and Unlawful Arrest and False Imprisonment (Count VII).

Simon asserts that Abbott's claims for assault (Count VI*) and unlawful arrest and false imprisonment (Count VII) fail because she has not alleged that any of Simon's employees were involved in the improper conduct. Abbott responds that Simon is liable on the theory of respondeat superior.

In New Hampshire, "[r]espondeat superior, or vicarious liability, ordinarily does not extend to torts by independent contractors because the employer reserves no control or power of discretion over the execution of the work." Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 465 (1995) (citing Carter v. Berlin Mills Co., 58 N.H. 52, 53-54 (1876)). There is an exception to this general rule, however, "when the independent contractor is engaged to perform work that is dangerous in

---

[2] Abbott was advised that Title III of the ADA does not provide for monetary damages in the court's order dated February 2, 2006 (docket no. 50) wherein the court dismissed ADA claims against Currier and Ouellette. Although the claims were dismissed for a separate reason, the court explained that Title III of the ADA does not provide for the sort of relief that Abbott sought. Abbott, nevertheless, reiterated her ADA claims against Simon in her third amended complaint.

itself." Id. (citing Thomas v. Harrington, 72 N.H. 45, 46-47 (1903)). This so-called inherent danger doctrine "applies only when 'the danger [arises] directly from the work . . . required to be done, and not from the negligent manner of its performance.'" Id. (citing Thomas, 72 N.H. at 46-47). "'The phrase inherently dangerous as applied to undertakings conducted through independent contractors often implies work that is dangerous even when conducted with reasonable care; . . . the exception relating to such undertakings has principally been applied in cases of demolition, excavation, and other clearly dangerous activities." Arthur at 465 (citing Carr v. Merrimack Farmers Exch., 101 N.H. 445, 449 (1958)) (internal quotation marks omitted).

Abbott makes broad, conclusory assertions that the "maintenance of security within the [m]all involves dangerous work" and that the "enforcement of security in the [m]all involves work that is inherently dangerous," (Pl.'s Opp. Mot. Dismiss 3), but cites to no New Hampshire or other authority to support her contention. Although New Hampshire's courts have not had occasion to determine whether the provision of security services constitutes an inherently dangerous activity, other courts have held that it does not. See Schreiber v. Camm, 848 F. Supp. 1170, 1177 (D.N.J. 1994) ("the use of armed security guards

to protect one's property is not so inherently dangerous as to confer a nondelegable duty upon the landowner"); Robert A. Brazener, Annotation, <u>Liability of one contracting for private police or security service for acts of personnel supplied</u>, 38 A.L.R. 3d 1332 ¶ 5b (collecting cases); <u>see also</u> <u>Powell v. City & County of Denver</u>, 973 F. Supp. 1198, 1203 n. 3 (D. Colo. 1997) (aptly noting that "[t]here is some irony in the proposition that providing security is an inherently dangerous activity with respect to third parties").

Because Control's provision of security services under contract to Simon does not constitute an inherently dangerous activity, Simon is not liable for torts committed by Control's employees. Accordingly, Simon is entitled to dismissal of Counts VI, VI* and VII.

### Conclusion

For the foregoing reasons, Simon Property Group, LP's motion to dismiss (document no. 62) is granted and all claims against it are dismissed.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 12, 2007

cc:  William R. Sullivan, Jr., Esq.
     William R. Sullivan, Sr., Esq.
     Donald E. Gardner, Esq.
     Catherine M. Costanzo, Esq.
     John P. Coakley, Esq.
     Richard J. Riley, Esq.
     Debra L. Mayotte, Esq.
     Vincent A. Wenners, Jr., Esq.
     Meredith M. Lasna, Esq.