UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Rhonda S. Abbott,
    Plaintiff

    v.                             Civil No. 05-cv-127-SM
                                     Opinion No. 2008 DNH 009
Town of Salem, New Hampshire;
Prints Plus, Inc.; Control
Security Services, Inc.; Louis
Currier; Jeffrey Ouellette;
Kristin Fili; Greg Weeden; Nicholas
J. Tela, and Denise L. Smith,
    Defendants

**O R D E R**

In her third amended complaint (document no. 59), plaintiff asserts clams under the Americans With Disabilities Act ("ADA" or "the Act") and the common law of New Hampshire. Before the court are motions for summary judgment filed by Control Security Services, Inc. ("Control") and the Town of Salem, Louis Currier, Jeffrey Ouellette, and Kristin Fili ("the Salem defendants"). Both motions are duly opposed. For the reasons given, Control's motion is granted in full; the Salem defendants' motion is granted as to Count VIII (plaintiff's ADA claim); and the court declines to exercise supplemental jurisdiction over plaintiff's state-law claims against the Salem defendants.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). To defeat a motion for summary judgment, "the non-moving party 'must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which she would  bear the ultimate burden of proof at trial.'" Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)). To make that showing, "the non-moving party may not rest merely upon the allegations or denials in its pleading." Id. (citation omitted). When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See id. (citing Rodríguez v. SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

2

**Background**

Rhonda Abbott's hearing is substantially impaired.[1]  On
November 3, 2001, she went to Prints Plus, Inc. ("Prints Plus"),
a store in the Mall at Rockingham Park ("the mall"), to pick up a
painting she had left for framing.  The clerk at Prints Plus,
Denise Smith, told Abbott that she, Smith, would have to search
through all the packages in the back room to find Abbott's
painting.  When Smith went into the back room to look, Abbott
followed her.  Smith asked Abbott to return to the front of the
store, which she did.  According to Smith, Abbott followed her
into the back room a second time, and spoke to her in an
increasingly loud and abusive manner.  Abbott admits that she
followed Smith into the back room once, but does not mention a
second time, and says she did not raise her voice.  At some
point, Abbott asked Smith to provide a pen and paper, so they
could communicate in writing.  Smith did not do so.  Ultimately,
Smith ordered Abbott to leave the Prints Plus store, and Abbott
understood Smith's order, but refused to comply with it.[2]

---

[1] Specifically, she has no hearing in her right ear and
approximately thirty percent discrimination hearing in her left
ear.  (Pl.'s Obj. to Salem Defs.' Mot. Summ. J. (document no.
106), Ex. 1 (Abbott Aff.), at 4.)

[2] While Abbott now presents an affidavit in which she states
that she did not hear Smith order her out of the store (Abbott
Aff., at 3), she is bound by her admissions that she understood

When Abbott refused to leave the store, Smith telephoned for assistance.  As a general matter, mall security is provided by Control, under an agreement with the mall's owner.  In addition, the mall's owner contracts with the Town of Salem ("the Town") for off-duty police officers, to provide additional security. When performing private police details at the mall, Salem police officers do not take directions or receive compensation from Control, and do not act as employees of Control.  (Currier Aff. ¶¶ 4–7.)[3]

In response to Smith's call for assistance, Salem police officer Louis Currier arrived at the Prints Plus store.  Currier says he was in uniform; Abbott says he was wearing a white shirt, and that she observed nothing that identified him as a police officer.  After some conversation, Currier ordered Abbott to

_____

Smith's command (Control's Mot. Summ. J. (document no. 95), Ex. 10 (Pl.'s Admis.) ¶ 13), and that she refused to comply with it (id. ¶¶ 16, 18).
        By order dated April 27, 2007 (document no. 87), the Magistrate Judge deemed admitted all the requests for admissions served by Control on November 27, 2006, due to plaintiff's failure to serve a written answer or objection within the time limit established by Rule 36(a) of the Federal Rules of Civil Procedure.

        [3] Officer Currier's uncontroverted affidavit testimony on these points is further supported by plaintiff's admissions. (See Pl.'s Admis. ¶¶ 4–7.)

leave the store.  (Pl.'s Admis. ¶ 14.)  Abbott understood the
order but refused to comply with it.  (Id. ¶¶ 15, 17, 19.)  More
specifically, when Currier told Abbott to leave the store, she
responded by saying "[n]ot without my painting."  (Control's Mot.
Summ. J., Ex. 13 (Abbott 5/9/07 dep.), at 103, 106 .)

     At approximately this point, Smith asked Currier to
communicate with her in writing.  He declined to do so.  However,
after Abbott told Currier that she wore a hearing aid, he looked
directly at her while speaking to her, to facilitate lip reading,
and used hand gestures.  (Control's Mot. Summ. J., Ex. 7.)

     When Abbott refused to leave the store, Officer Currier took
out his handcuffs and, according to his contemporaneous police
report, told her that if she did not leave the store, she would
be arrested.  After further conversation, Abbott said to Currier:
"Don't arrest me.  I'll leave." (Abbott 5/9/07 dep., at 105-06,
107-08).  Currier responded by telling Abbott that it was too
late to avoid arrest.  During that conversation, Abbott began to
back away from Currier.  (Abbott 5/9/07 dep., at 107.)  Currier
then reached for Abbott's hands, in order to place the handcuffs
on her.  Abbott and Currier agree that Currier forced Abbott to
the ground; Abbott says the action was essentially unprovoked

while Currier says he took Abbott to the floor after she attempted to run away from him.  Both agree that when Currier took Abbott to the floor, she struck her head on a fixture.

As Currier was handcuffing Abbott, Salem police officer Jeffrey Ouellette arrived at Prints Plus.  Currier and Ouellette escorted Abbott from the store, through the mall, and to a Salem police cruiser driven by Salem police officer Kristin Fili. Officer Fili transported Abbott to the Salem police station.  As they were escorting Abbott out of the mall, Currier and Ouellette were joined by two employees of Control, Nicholas Tela and Greg Weeden.  Neither Tela nor Weeden nor any other Control employee came into any physical contact with Abbott.  (Pl.'s Admis. ¶¶ 1- 3.)

At the Salem police station, Abbott was booked and released on bail.  She alleges that while she was at the police station, Fili and other Salem police officers taunted her and mocked her hearing impairment.

On October 26, 2004, Abbott filed a complaint in the District of Massachusetts, asserting ADA claims against Denise Smith, Prints Plus, Control, Simon Property Group, and the Salem

defendants.  By order dated March 29, 2005, Judge Zobel dismissed
Abbott's claims against all defendants, other than Prints Plus,
for improper venue and lack of personal jurisdiction.  (Control's
Mot. Summ. J., Ex. 16.)  The court further noted that Prints Plus
had filed for bankruptcy after plaintiff filed her complaint and,
consequently, declined to rule on Prints Plus's motion to
dismiss.  Instead, she administratively closed the case against
Prints Plus, subject to being reopened should the bankruptcy
code's automatic stay be lifted.

    Approximately one week after Judge Zobel dismissed
plaintiff's case, and notwithstanding the court's specific
reference to Prints Plus's bankruptcy filing and the automatic
stay, plaintiff filed an identical complaint in this court,
listing Prints Plus as a defendant.  The original complaint
contained five counts, and asserted claims only under the ADA.
After three amendments, plaintiff's complaint has grown to eleven
counts, including three ADA claims (against Prints Plus, Simon,
and the Town), four claims for assault, and four claims for
"unlawful arrest and false imprisonment."  By order dated March
12, 2007 (document no. 82), all claims against Simon, including
the ADA claim, were dismissed.

Control and the Salem defendants now move for summary judgment on all of the claims against them.

## Discussion

A. Control's Motion for Summary Judgment

In Count IV of her third amended complaint, plaintiff asserts a claim of assault against Control, Currier, Ouellette, Tela[4] and Weeden based upon the manner in which she was taken to the ground and handcuffed, and later walked through the mall in handcuffs.  In Count V, she asserts, against the same defendants, a claim she labels "unlawful arrest and false imprisonment."

Control moves for summary judgment on a variety of grounds, two of which are sufficient to justify awarding the relief it seeks: (1) it was not vicariously liable for the conduct of Officers Currier and Ouellette; and (2) none of its own employees ever assaulted or arrested plaintiff.  For her part, plaintiff is bound by her admissions that: (1) Officers Currier and Ouellette were neither employees of Control nor directed by Control in the conduct of their duties; and (2) no Control employee ever came

---

[4] By endorsed order dated October 23, 2006, the court granted plaintiff's motion to dismiss, without prejudice, her claims against Tela (document no. 71).

into physical contact with her (see also Abbott 5/18/07 dep., at
170, 172).  Moreover, plaintiff has testified that neither Tela
nor Weeden spoke to her at all.  (Abbott 5/9/07 dep., at 124;
Abbott 5/18/07 dep., at 170, 172.)  In the face of those
admissions and undisputed facts, plaintiff attempts to rescue her
claims against Control with the following argument: (1) Simon
contracted with Control to provide security at the mall; (2)
Control's employees, Tela and Weeden, ratified and participated
in the actions of Officers Currier and Ouellette by being present
at the time they occurred, thus making Control vicariously liable
for those actions.

     Plaintiff's ratification theory is drawn from New
Hampshire's common law of agency.  See, e.g., Fleet Bank—N.H. v.
Chain Constr. Corp., 138 N.H. 136, 139 (1993); Appeal of Sanborn
Reg'l Sch. Bd., 133 N.H. 513, 520 (1990).  According to
established principles of agency:

> For ratification of an act of an agent to occur, there
> first must have been an attempt to act as agent.
> Connolly & a. v. Bank, 92 N.H. 89, 91 (1942).  Stated
> another way, "[a]n act, to be susceptible of
> ratification, must be done at the time on the behalf of
> the person who afterwards undertakes to ratify it."
> Saltmarsh v. Candia, 51 N.H. 71, 77 (1871).

Fleet Bank, 138 N.H. at 139 (parallel citations omitted).  The
problem with plaintiff's ratification theory is that she has
produced no evidence that Currier or Ouellette ever acted, or
attempted to act, as agents of Tela, Weeden, or Control, and
Control has produced undisputed evidence that Currier and
Ouellette were not its agents.  Moreover, plaintiff has produced
no evidence that Tela, Weeden, or Control did or said anything
after the fact to ratify the actions of Currier and Ouellette.
See Appeal of Sanborn, 133 N.H. at 520 ("We hasten to point out,
however, that implied ratification cannot be based solely on mere
inaction . . . .").  Thus, plaintiff's ratification theory fails
as a matter of law.

        Because none of the assertedly tortious acts in this case
were committed by agents acting on behalf of Control, and because
Control's own agents neither committed nor caused to be committed
any of the tortious acts plaintiff complains of, Control is
entitled to judgment as a matter of law on Counts IV and V.
Moreover, as plaintiff has admitted that Weeden did nothing other
than walk with her and the Salem police officers from the Prints

Plus store to the entrance of the mall, Weeden is also entitled to judgment as a matter of law on Counts IV and V.[5]

## B. The Salem Defendants' Motion for Summary Judgment

In Count VIII of her third amended complaint, plaintiff asserts that the Town violated Title II of the ADA when Officers Currier, Ouellette, and Fili denied her adequate assistance, to compensate for her hearing impairment, both at the mall and at the Salem police station.  Specifically, she claims that because she was denied adequate assistance, she "was assaulted, detained without cause, and falsely imprisoned [and] subjected to great indignities, humiliation and disgrace being compelled to walk, handcuffed through the Mall in full view of the large crowd of shoppers; thereby suffering mental and physical pain; requiring medical and psychiatric treatment."  (Third Am. Compl. ¶ 37.) The assistance plaintiff claims to have been denied was the opportunity to communicate with pen and paper, rather than orally.

---

[5] The court notes that plaintiff appears not to have filed notice that she has served her complaint on Weeden.  Ordinarily, she would be granted time to correct that deficiency, but given the undisputed factual record, and the resolution of the claims against Control, any such effort necessarily would be futile.

The Town moves for summary judgment on Count VIII, arguing that the undisputed factual record demonstrates that even though the officers chose not to communicate with plaintiff in writing, she was capable of understanding them and did understand their direction.  As a consequence, they argue, she was not discriminated against as a result of her disability.  Plaintiff's objection to summary judgment on her ADA claim states, in its entirety:

> The Town of Salem violated the Americans with Disabilities Act (ADA) in denying Abbott the means of effective communication so that she could enjoy the benefits of the Mall an[d] Prints [Plus].  Effective communication is vital for those disabled by deafness. The record is replete with Abbott's repeated requests for effective communication and Smith, Currier and Ouellette's refusal in violation of Abbott's rights under the ADA.

(Pl.'s Obj. to Salem Defs.' Mot. Summ. J., at 5.)  Plaintiff has not "set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which she would  bear the ultimate burden of proof at trial." Torres-Negron, 488 F.3d at 39.  Consequently, her objection is facially insufficient to defeat the Town's motion for summary judgment.  Nevertheless, the court will address the merits of plaintiff's ADA claim.

Plaintiff's ADA claim is based upon Title II of the Act which provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  To prevail on a Title II claim, a plaintiff must demonstrate:

> (1) that [she] is a qualified individual with a disability; (2) that [she] was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of [her] disability.

Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006) (quoting Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000)).

Here, there is no dispute that plaintiff is a qualified individual with a hearing disability.  In her objection to summary judgment, plaintiff seems to suggest that the "public entity" at issue in her ADA claim is the mall, or the Prints Plus store.  However, because neither the mall nor the store qualifies as a public entity under the ADA, see 42 U.S.C. § 12131(1), the

court will presume that the public entity at issue is the Salem police department, and that the disputed action is the failure of Officers Currier and Ouellette to communicate with plaintiff in writing prior to or during her arrest, which is generally in keeping with the allegations set out in Count VIII of the third amended complaint.[6]

Whether or not the ADA provides any rights to an arrestee who is also a person with a disability is a question of first impression in this circuit.  Cf. Buchanan, 469 F.3d at 177 ("We bypass the question of whether Title II of the ADA imposes duties on a county sheriff's department to draft policies and train officers on the needs of the mentally ill public.").  And, there is a "debate [among the circuits] about whether police conduct

---

[6] Plaintiff also seems to suggest that the Town faces ADA liability for the humiliation she suffered while being escorted through the mall after her arrest.  But, under the circumstances of this case, as discussed below, that is not a cognizable injury under the ADA.  See Rosen v. Montgomery County, 121 F.3d 154, 158 (4th Cir. 1997).  Similarly, she has not stated a cognizable ADA claim based upon her treatment at the Salem police station; she "does not assert that better communication would have changed events one iota," id., and the disability-based mocking she alleges, no matter how distasteful, is not the sort of discrimination the ADA was enacted to prevent, see Hassan v. Slater, 41 F. Supp. 2d 343, 353 (E.D.N.Y. 1999) (denying, on grounds of futility, plaintiff's motion to amend complaint to add an ADA claim based upon "humiliating, degrading and insulting" remark directed toward him by railway ticket agent, over public loudspeaker).

during an arrest is a program, service, or activity covered by
the ADA." Bircoll v. Miami-Dade County, 480 F.3d 1072, 1084
(11th Cir. 2007).  However, assuming that the ADA did impose a
duty upon Officers Currier and Ouellette to provide effective
communication during the course of plaintiff's arrest, the
undisputed factual record demonstrates that they fulfilled any
such obligation.

     In Bircoll, a deaf motorist argued that the police officer
who arrested him for DUI violated his rights under the ADA by
failing to provide an interpreter while he was administering
field sobriety tests.  480 F.3d at 1085.  In rejecting that
argument, the court of appeals explained that "[t]he purpose of
the [ADA] is to place those with disabilities on an equal
footing, not to give them an unfair advantage." Id. at 1086
(quoting Kornblau v. Dade County, 86 F.3d 193, 194 (11th Cir.
1996)).  The court also noted that "the actual communication
between [Officer] Trask and [defendant] Bircoll was not so
ineffective that an oral interpreter was necessary to guarantee
that Bircoll was on equal footing with hearing individuals."
Bircoll, 480 F.3d at 1086).  According to the court, "[w]hile the
communication may not have been perfect, Bircoll, by his own

15

admission, understood that he was being asked to perform field sobriety tests." <u>Id.</u>

Here, notwithstanding her subsequent testimony to the contrary (Abbott Aff., at 4), plaintiff is bound by her admissions that she both understood and knowingly disobeyed orders to leave the Prints Plus store issued by both Denise Smith and Officer Currier.  Because plaintiff understood that she had been ordered to leave the store, and orally refused to do so, Officer Currier had no reason to think that he was not communicating effectively with her.  By affirmatively refusing to comply with the order to leave (telling Officer Currier "not without my painting"), and later asking the officers not to arrest her, plaintiff demonstrated that she possessed sufficient information to understand why she was being arrested. Consequently, the Salem police officers were under no obligation to provide additional assistance to accommodate plaintiff's hearing impairment.  <u>See</u> <u>id.</u>  Moreover, given plaintiff's knowing disobedience of Officer Currier's order, the court concludes, as a matter of law, that probable cause existed to arrest her for failing to comply with Officer Currier's order to leave the store, and that she was arrested for that reasons and not because of her hearing impairment.  <u>Cf.</u> <u>Bates ex rel. Johns v.</u>

16

Chesterfield County, 216 F.3d 367, 373 (4th Cir. 2000)
(explaining that suspect was arrested not because of his
disability but "because there was probable cause to believe that
he assaulted a police officer").  Accordingly, the Town is
entitled to judgment as a matter of law on plaintiff's ADA claim.

Dismissal of Count VIII leaves this case without a federal
claim.[7]  Consequently, the court declines to exercise
supplemental jurisdiction over plaintiff's state-law claims
against the Salem defendants.  See McInnis-Misenor v. Me. Med.
Ctr., 319 F.3d 63, 74 (1st Cir. 2003) (citing Camelio v. Am.
Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)).

### Conclusion

For the reasons given, Control's motion for summary judgment
(document no. 95) is granted; the Salem defendants' motion for

---

[7] The other two federal claims in plaintiff's third amended
complaint were presented in Count I (an ADA claim against Prints
Plus) and Count VI (an ADA claim against Simon).  Count VI was
dismissed by order dated March 12, 2007.  And, given the Prints
Plus bankruptcy, as reported by Judge Zobel, this court will
assume, perhaps charitably, that the claims asserted against
Prints Plus in this action resulted from a clerical error or
oversight rather than a conscious filing in contravention of the
automatic stay provisions of the bankruptcy code.  Nothing in
this record suggests that relief from that stay was ever sought
or granted or that the automatic stay provisions did not in fact
apply.

summary judgment (document no. 97) is granted as to the ADA claim against the Town (Count VIII); and the court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims against the Salem defendants.  Based upon the foregoing, all that remains in this case is to hold a hearing on damages against Denise Smith, as a result of the default entered against her on August 1, 2005 (document no. 31).  The clerk will schedule such a hearing before the magistrate judge upon plaintiff's notifying the court of her intention to proceed on that default, such notice to be filed within ten (10) days of the date of this order.  Failure to receive such notice will result in dismissal of that claim for lack of prosecution.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

January 16, 2008

cc:  William R. Sullivan, Jr., Esq.
     William R. Sullivan, Sr., Esq.
     Donald E. Gardner, Esq.
     Catherine M. Costanzo, Esq.
     John P. Coakley, Esq.
     Richard J. Riley, Esq.
     Debra L. Mayotte, Esq.
     Vincent A. Wenners, Jr., Esq.
     Meredith M. Lasna, Esq.